Lazarus T. Medveson v. Commissioner.
Medveson v. Commissioner
Docket No. 5843-68.
United States Tax Court
T.C. Memo 1970-107; 1970 Tax Ct. Memo LEXIS 253; 29 T.C.M. (CCH) 487; T.C.M. (RIA) 70107; May 7, 1970, Filed *253 Lazarus T. Medveson, pro se, 3110 Woodworth Ave., Hazelcrest, Ill.,William L. Ringuette, for the respondent. QUEALY
Memorandum Findings of Fact and Opinion QUEALY, Judge: This proceeding involved a determination that there is due from the petitioner deficiencies in income taxes in the amount of $22 for the calendar year 1965 and in the amount of $506.26 for the calendar year 1966. Findings of Fact Petitioner's returns for those years were filed with the district director of internal revenue in Chicago, Illinois. At the time of filing the petition, the petitioner resided at 3110 Woodworth Place, Hazel Crest, Illinois. The adjustments which resulted in the proposed deficiencies were as follows: *10 Adjustment
Calendar Years
1965
1966
Fee Income
[670.00)
$ 670.00
Lodging Expense
780.00
780.00
Medical Expense (20.00)
580.00
Total
$ 90.00
$2,030.00
With respect to the item of fee income, the respondent determined that the petitioner was taxable on certain payments from Webcor, Inc. in the year 1966, rather than in the year 1965. In making such determination, the respondent relied on the W-2 Form filed by petitioner's employer *254 showing payment for services in the year 1966. With respect to the item of lodging expense, the respondent disallowed an amount claimed by the petitioner for lodging in connection with petitioner's employment for the American Photocopy Equipment Co. at Evanston, Illinois. With respect to the adjustment for medical expenses, the respondent disallowed a claimed payment of $580 for the year 1966. This adjustment, after deducting the limitation of 3 percent of adjusted gross income, stemmed from the disallowance of a claim as medical expenses for a payment of $685 to a Cynthia Chatfield in the year 1966. Opinion The petitioner filed a petition challenging both the right of respondent to examine the petitioner's returns and the failure of the respondent to accept the returns as filed. The petitioner appeared on his own behalf. At a pre-trial conference, the Court explained to the petitioner the procedure which would be required in order to submit the issues for a decision by the Court. However, when the case was called for trial, the petitioner insisted on presenting an unsworn statement or argument in support of his allegations. At the outset, the petitioner objected to the *255 adequacy of the answer. The Court ruled that the respondent's answer complied with the rules of the Court and was adequate. With respect to the lodging expense of $780 claimed for the year 1965, and $780 claimed for the year 1966, in connection with petitioner's employment, the Court advised the petitioner, as follows: 488 THE COURT: * * *. We will take up first your rent while holding a job 35 miles away. As I understand it, it was not a temporary job, it was, as you put it, as permanent as any job of today. The taxpayer is not entitled to deduct commuting expenses or the expenses of temporary lodging nearer to his job. That is the state of the law. Neither the respondent nor I have any control over that. With respect to the adjustment of $670 on account of the payments received from Webcor, Inc., the petitioner was offered an opportunity to prove that the services were performed and that payment was due in the prior year. With respect to this issue, there was the following colloquy: THE COURT: * * *. On the other item, with respect to the amount of the W2 Form, as I understand that, the work was performed in 1965 and well before the end of the year, when normally *256 you would have expected to receive payment, payment was due you, and presumably if you had complained loud enough, you probably would have been paid, but because of red tape or for other reasons your check was not sent to you until after the end of the year, and you reported it in one year and the company filed a W2 Form for the subsequent year. Now, it is my understanding that the respondent is perfectly willing to forego that adjustment and put it back in the year that you reported it in. Is that correct? MR. RINGUETTE: Yes, Your Honor, but I would like to explain one thing on that. I did make a rough computation, had somebody make a rough computation. THE COURT: It would cost Mr. Medveson money. MR. RINGUETTE: It would cost Mr. Medveson money, plus interest in one year. THE COURT: So I would suggest that we do not do this. With respect to the deductibility of the amounts claimed on account of medical expenses for the calendar year 1966, the following colloquy occurred: THE COURT: On the medical expenses, why don't you - if you want to take the stand under oath and outline what your medical expenses amounted to, the Court would be perfectly willing to take that into *257 consideration. MR. MEDVESON: The point for which I came to this Court to decide was this: I believe that anything of reasonable evidence he is obliged to accept, and if you don't consent to that, let that be your finding. THE COURT: There is no finding here. I have no evidence whatsoever. If you have receipted bills, if you want to take the stand under oath and testify as to what you paid and who you paid it to and the purpose for which you paid it, I am willing to accept that. Notwithstanding the advice of the Court, the petitioner refused to submit any evidence with respect to the items in question, the gravamen of the petitioner's complaint being that the respondent had unreasonably and without cause selected petitioner's return for examination and had refused to accept the petitioner's return at face value. The following colloquy occurred: MR. MEDVESON: I have this question in the final paragraph of my petition. I may have come to the wrong court, of course, but I do what the rules say. Now, for example, do you agree with this? "Since the petitioner's own letter attached to the 1966 return was the sole authority on which the Commissioner could investigate, petitioner *258 prays this Court to find that only the subject of this letter was proper to investigate." THE COURT: That is not correct, Mr. Medveson. As a matter of law, the Commissioner doesn't need any authority to examine your return. The authority is in the law, and the duty is in the law. There is a process of selection. Now, whether or not that letter was the triggering device that prompted the selection of your return or whether it was the spin of the wheel, we don't know and we don't care. The Commissioner had every right to pick and choose the returns he wanted to examine. MR. MEDVESON: On what basis? What rules do you give them to pick the returns? THE COURT: There are no rules. He has a right to examine every one of them; he has a right to examine the 57 million that are filed. Obviously, since he can't examine 57 million, he has to pick a sampling. MR. MEDVESON: In other words, we can pick a sampling of society off the street and ask him to show more proof than anybody else? THE COURT: I gather that your basic objection here is not that you are prepared to prove that the Commissioner 489 is wrong, but that the Commissioner shouldn't * * * select you as against Joe Doe. *259 MR. MEDVESON: He is violating civil rights to pick anyone's return. THE COURT: Is that all you have to say? MR. MEDVESON: Yes. In view of the petitioner's refusal to present any evidence, notwithstanding having been advised by the Court both in a pretrial conference and at the trial that such evidence would be necessary in order to overcome the presumption attaching to the respondent's determination, the Court has no alternative except to enter a decision for the respondent. Decision will be entered for the respondent.